STATE OF HAWAI'I, Plaintiff-Appellee,
v.
NEIL J. BURULL, Defendant-Appellant.
No. 28922
Intermediate Court of Appeals of Hawaii.
March 12, 2009.
On the briefs:
Jon N. Ikenaga, Deputy Public Defender, State of Hawai'i, for Defendant-Appellant.
Andrew D. Son, Deputy Prosecuting Attorney County of Hawai'i, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
RECKTENWALD, C.J., WATANABE, and FUJISE, JJ.
Defendant-Appellant Neil J. Burull (Burull) appeals the amended judgment entered by the District Court of the Third Circuit, Puna Division (district court)[1] on January 22, 2009, nunc pro tunc to November 27, 2007, convicting and sentencing him for operating a vehicle under the influence of an intoxicant (OVUII) in violation of Hawaii Revised Statutes (HRS) § 291E-61(a) (Supp. 2006).
Burull contends that the district court erred when it denied his motion to suppress evidence that was obtained following a warrantless traffic stop (motion to suppress) because the stop was based on a U-turn across a double solid yellow line that was not prohibited by statute and was therefore legal. Burull argues that had his motion to suppress been granted, there would be no evidence that he was OVUII.
We affirm.

A.
Burull filed his motion to suppress on July 18, 2007. At the August 21, 2007 hearing on the motion, Officer Robert Pauole (Officer Pauole) testified that at about 7:25 p.m. on November 21, 2006, he was screening vehicles at a DUI (driving under the influence) checkpoint on Route 139 in front of Kea'au School in the District of Puna, County and State of Hawai'i when he observed a pick-up truck about three hundred feet from the checkpoint pull over to the right side of the road and fail to use a turn signal. The pick-up truck then "paused for a second or two and then conducted a U-turn, then pulled back into the lane of traffic again, failed to use the turn signal." Officer Pauole explained that the area where the U-turn was executed had double solid yellow lines and it was "illegal to cross over [the lines] doing a U-turn." Officer Pauole got into his vehicle, pursued the pick-up truck, and stopped the pick-up truck's driver, Burull, for failing to use a turn signal and disregarding the double solid yellow lines.
Patty Chastain (Chastain), Burull's friend, testified that she and Burull had been at Charley's Bar and Grill (Charley's) for dinner and drinks on the evening that Burull was arrested for OVUII. She and Burull left Charley's in separate vehicles, with Burull following Chastain, and headed for Chastain's home in Paradise Park. Chastain testified that as she approached the DUI checkpoint, she observed, through her rear-view mirror, that Burull had put on his left-turn blinker and had "turned around" so she "assumed that he was going home."
Burull testified that when he became aware that there was a DUI checkpoint on the road, he "[p]anicked [,]" "pulled to the side of the road [,]" put on his left-turn blinker, and made a U-turn. Burull insisted that it was legal to make the U-turn and stated that there was no car behind him that was put at risk by the U-turn.
In denying Burull's motion to suppress, the district court concluded, in relevant part, as follows:
1. [Burull] violated [HRS] § 291C-84, Turning movements and required signals, when he failed to execute a left turn signal prior to making a left turn while crossing the double yellow solid line while making his u-turn.
2. [Burull"s] failure to execute a left turn signal prior to making the left turn crossing the double yellow solid line while making his u-turn is a specific articulable fact and provided Officer Pauole with reasonable suspicion that a traffic violation had just occurred.
It is not disputed that after Burull was stopped, Officer Pauole performed three field sobriety tests on Burull, determined that Burull was OVUII, and arrested Burull for OVUII.

B.
On appeal, Burull contends that the district court erred in denying his motion to suppress because (1) his U-turn did not violate HRS § 291C-82 (2007),[2] the statute regarding U-turns; (2) HRS § 291C-84 (2007), which relates to turn signals, does not require use of a turn signal for U-turns; and (3) HRS § 291C-38 (2007),[3] which is entitled "[l]ongitudinal traffic lane markings[, ]" does not prohibit crossing double solid yellow lines while executing a U-turn.
Since the district court denied Burull's motion to suppress solely on the basis that Burull failed to execute a left-turn signal before making a U-turn, we turn first to Burull's second contention on appeal. HRS § 291C-84 states:
Turning movements and required signals. (a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section 291C-81, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.
(b) A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning; provided that for a bicycle or moped, such signal shall be given continuously during not less than the last one hundred feet traveled by the bicycle or moped before turning, and shall be given when the bicycle or moped is stopped waiting to turn; and further provided that a signal by hand and arm need not be given continuously by the driver of a bicycle or moped if the hand is needed in the braking, control, or operation of the bicycle or moped.
(c) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.
(d) The signals provided for in section 291C-85 (b)[4] shall be used to indicate an intention to turn, change lanes, or start from a parked position and shall not be flashed on one side only on a parked or disabled vehicle, or flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear.
(Emphases and footnote added.) Burull argues that HRS § 291C-84
does not contain any provisions related to U-turns. Subsection (b) of that statute only requires that turn signals be executed when the driver is turning right or left  there is no mention of U-turns or "turning so as to proceed in the opposite direction," hence there is no required signal for making a U-turn.
Moreover, HRS § 291C-38, "Longitudinal traffic lane markings," does not prohibit U-turns across double-yellow solid lines. Subsection (c)(8) states in relevant part:
A double solid yellow line is used to indicate the separation between lanes of traffic moving in opposite directions. The crossing of a double solid yellow line by vehicular traffic is prohibited except when the crossing is part of a left turn movement.

(Emphasis added). In actuality, as [Burull's] U-turn involved a "left turn movement" (as part of the execution of the U-turn), this section would in fact allow a U-turn across a double-yellow solid line.
Burull's argument is a bit inconsistent. On the one hand, Burull argues that a U-turn involves a "left turn movement" that is specifically excepted from the prohibition in HRS § 291C-38 (c) (8) (2007) against the crossing of double solid yellow lines by vehicular traffic. On the other hand, Burull argues that HRS § 291C-84 (b) "only requires that turn signals be executed when the driver is turning right or left" and therefore does not apply to U-turns.
The Hawai'i Supreme Court "has repeatedly stated that the basic tenet of statutory interpretation is that our courts are bound by the plain, clear, and unambiguous language of the statute unless literal construction would produce absurd or unjust results that are clearly inconsistent with the purposes and policies of the statute." Kang v. State Farm Mut. Auto. Ins. Co., 72 Haw. 251, 254, 815 P.2d 1020, 1021-22 (1991). Additionally, HRS § 1-14 (1993) states that "[t]he words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning."
Applying the foregoing principles, we conclude that HRS § 291C-84 (b) plainly, clearly, and unambiguously requires that the driver of a vehicle give a continuous signal of intention to turn right or left "during not less than the last one hundred feet traveled by the vehicle" before the turn. A U-turn is defined as "a turn resembling the letter U; esp: a 180-degree turn made by a vehicle in a road [.]" Merriam-Webster's Collegiate Dictionary 1298 (10th ed. 2000). We are hard-pressed to conceive of any situation where a U-turn could be completed by a vehicle without turning either to the right or left. Therefore, HRS § 291C-84 clearly requires that a turn signal be used before a U-turn is made.

C.
Burull argues alternatively that the district court clearly erred in finding that he did not use the pick-up truck's signal lamps or his hands "to indicate that he would be turning left to cross the double yellow solid center line while executing the u-turn." He points out that both he and Chastain testified that he had used his left blinker to signal that he would be making a U-turn.
"It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." State v. Mattiello, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) (internal quotation marks and brackets omitted). Moreover, when an appellate court reviews the legal sufficiency of evidence to support a conviction, "evidence adduced in the trial court must be considered in the strongest light for the prosecution [. ]" Id.
In this case, the district court apparently determined that Officer Pauole's testimony that Burull did not use a left-turn signal before executing the U-turn was more credible than Chastain's and Burull's testimony. The district court did not clearly err in so determining.

D.
Since Burull's failure to use a signal before making a U-turn justified Officer Pauole's stop of Burull, we need not address Burull's remaining contentions on appeal.

E.
In light of the foregoing discussion, we affirm the amended judgment entered on January 22, 2009, nunc pro tunc to November 27, 2007, in the District Court of the Third Circuit, Puna Division.
NOTES
[1] The Honorable Harry P. N. Freitas presided.
[2] HRS § 291C-82, which has not changed since Burull was stopped by Officer Pauole on November 21, 2006, provides as follows:

Turning so as to proceed in the opposite direction. (a) No vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to or near the crest of a grade, where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within five hundred feet.
(b) In addition to the prohibition in subsection (a), the director of transportation is authorized to and the counties may by ordinance with respect to highways under their respective jurisdictions prohibit the turning of any vehicle so as to proceed in the opposite direction on the highway at any location where such turning would be dangerous to those using the highway or would unduly interfere with the free movement of traffic.
(c) The director of transportation and the counties by ordinance with respect to the highways under their respective jurisdictions shall place signs which are clearly visible to an ordinarily observant person prohibiting the turning of a vehicle to proceed in the opposite direction. The signs shall be official signs and no person shall turn any vehicle in violation of the restrictions stated on such signs.
Burull notes that he did not violate any of the statutory prohibitions contained in HRS § 291C-82 (a) . He also points out that HRS § 291C-82 does not require persons to signal before making a U-turn or prohibit the making of U-turns across double solid yellow lines.
[3] HRS § 291C-38 currently provides, as it did when Burull was arrested for OVUII, in relevant part, as follows:

Longitudinal traffic lane markings. (a) Traffic lane markings shall be yellow, white or red in color. Black may be used in combination with these colors where the pavement itself does not provide sufficient contrast.
(b) Lane markings shall conform to the following concepts:
. . . .
(2) Yellow lines indicate the separation of lanes of traffic flowing in opposing directions or the left boundary of a traffic lane at a particularly hazardous location.
. . . .
(5) Solid lines are restrictive in character.
. . . .
(7) Double lines indicate maximum restriction.
. . . .
(c) Longitudinal traffic lane markings shall have the following applications:
. . . .
(6) A solid yellow line is used to indicate the left edge of a traffic lane where overtaking and passing on the left is prohibited. The crossing of a solid yellow line by vehicular traffic is prohibited except when the crossing is part of a left turn movement.
(7) A solid yellow line is also used to indicate the left edge of each roadway of a divided street or highway.
(8) A double solid yellow line is used to indicate the separation between lanes of traffic moving in opposite directions. The crossing of a double solid yellow line by vehicular traffic is prohibited except when the crossing is part of a left turn movement.
(Emphases added.)
[4] HRS § 291C-85 (2007) provides currently, as it did at the time Burull was arrested, as follows:

Signals by hand and arm or signal lamps. (a) Any stop or turn signal when required herein shall be given either by means of the hand and arm or by signal lamps, except as otherwise provided in subsection (b).
(b) Any motor vehicle in use on a highway shall be equipped with, and required signal shall be given by, signal lamps when the distance from the center of the top of the steering post to the left outside limit of the body, cab, or load of such motor vehicle exceeds twenty-four inches, or when the distance from the center of the top of the steering post to the rear limit of the body or load thereof exceeds fourteen feet. The latter measurement shall apply to any single vehicle, also to any combination of vehicles.